Julien E. FERNANDEZ, Plaintiff,

v.

RETAIL CREDIT COMPANY, Defendant.

Civ. A. No. 71–2958.

United States District Court,
E. D. Louisiana.

Sept. 13, 1972.

---

Harold J. Rhodes, Berwick, La., for plaintiff.

J. Barnwell Phelps, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendant.

ALVIN B. RUBIN, District Judge:

This case raised the issue whether a report on a key man insurance policy issued in connection with a corporation's application for insurance on its president is within the scope of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Fernandez' claim against Retail Credit invokes the Act. The defendant seeks dismissal of the complaint for want of jurisdiction, and summary judgment with respect to claims under the Act. Since the motion for summary judgment is well founded, and there is otherwise no jurisdiction, both the motions must be granted with respect to the principal relief sought.

American Towing Corporation, of which Fernandez was President, sought a $500,000 loan from Citizens National Bank. The bank required insurance on Fernandez' life as a condition of the loan. An application for insurance was filed with Life Insurance Company of North America (INA) naming American Towing Corporation as the owner and beneficiary of the policy. The premium was paid by that corporation, which pledged it to the Bank as collateral for its loan. Fernandez asserts that he was collaterally motivated to obtain the insurance in order "to protect his estate" from liability on debts of the corporation and that his family would benefit if the insurance proceeds exceeded the debt. However the only beneficiary named in the policy is the corporation. No alternate or successor or co-beneficiary is designated. Thus, the entire face value of the policy would be paid to American Towing Company upon Fernandez' death regardless of the amount of the loan still outstanding.[1]

The Fair Credit Reporting Act, 15 U.S.C. § 1681, was aimed at problems in connection with consumer reporting agencies. Among its purposes were "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy" and "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for . . . information in a manner which is fair and equitable to the consumer . . . ." 15 U.S.C. § 1681. It limits the circumstances under which a "consumer report" may be furnished by a consumer reporting agency. Id. at § 1681b. It creates civil liability only for negligence "in failing to comply with any requirement imposed under this subchapter with respect to any consumer . . . ." Id. at § 1681o. The requirements of the subchapter relate only to consumer reports and consumer reporting agencies.

---

1. The petitioner does not in his complaint state which insurance company denied him coverage. In response to interrogatories and in subsequent affidavits the plaintiff revealed that at the time of suit he was covered under a rated policy issued by New York Life, but this policy was subsequently cancelled; that a rated policy was issued by the Insurance Company of North America; and, that coverage was refused by Oregon National Life Ins. In all cases, American Towing was the beneficiary.

The Act defines the term "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) *credit or insurance to be used primarily for personal, family, or household purposes*, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title." (Emphasis supplied.)

█ It thus appears clear that a report to be used to establish eligibility for insurance to be used primarily, not for personal, family or household purposes, but for business purposes is *not* a consumer report.

The Senate Committee Report states that, in addition to the purposes already recited, the act is designed "to give consumers a chance to correct inaccurate information in their credit file; to preserve the confidentiality of such information; and to prevent undue invasions of the individual's right to privacy." Congressional Record-Senate, October 9, 1970, S 1763, p. 21263.

The debate on the House floor makes it clear that reports in connection with business insurance were intentionally excluded. Thus, Mrs. Sullivan, in advocating passage of the Act, said:

Insofar as reports of a business nature are concerned, this point was raised continually in our hearings on H.R. 16340 in the Subcommittee on Consumer Affairs, and I think we always made clear that we were not interested in extending this law to credit reports for business credit or business insurance. The conference bill spells this out, furthermore in section 603(d), which defines a "consumer report" as a report, and so on, "which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes" and so forth. Congressional Record-House, Oct. 13, 1970, H 10052, H 10053.

This is consistent with the statement of purposes for which a "consumer reporting agency" may furnish a "consumer report." 15 U.S.C. § 1681b. Section 1681a(d) extends the definition of "consumer report" to "(3) other purposes authorized under section 1681b of this title." Omitting the parts of that section not relevant here, it permits a report to be furnished:

"(3) To a person which it has reason to believe—

\* \* \* \* \* \*

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer." Id.

Interpreting subpart (C) to include all life insurance, regardless of owner or beneficiary, would render meaningless the intentional limitation of "insurance to be used primarily for personal, family, or household purposes." § 1681a(d)(1). It cannot be supposed that Congress would narrowly define "consumer report" in one clause of the act if that restriction were without meaning. It must be presumed that the definitional section 1681a(d) is primary, and that section 1681b is interpretive of the permissible purposes of a consumer report. This conclusion is supported by the legislative history.

█ With respect to subpart (E), the words are clearly designed to permit reports to be given only to those who have legitimate business needs for the report. The term "legitimate business needs"

and "in connection with a business transaction" refer to the needs and objective of the person *to whom* the report is furnished, not the business needs of the person about whom it is furnished. It does not extend the act to cover the consumer's business transactions.

This likewise is the meaning given the Act by the Federal Trade Commission, Division of Special Projects, Bureau of Consumer Protection, one of the agencies charged with Administrative Enforcement of the Act. 15 U.S.C. § 1681s. In its Interpretative Bulletin found in CCH, Consumer Credit Guide, #11,304 A.1., the Agency interprets § 603(d)(a):

> "1. *Credit or Insurance to be Used Primarily For Personal, Family or Household Purposes.*
>
> This section serves as a limiting factor on such reports. Thus, if the purpose for which the information is collected *and* for which the report is obtained is to extend business credit to an individual or a sole proprietorship, the information would not be a consumer report and the Act would not apply. If the credit or insurance is to be extended to some form of business organization such as a partnership or corporation, again, the Act would not apply. This discussion of the application of the Act to business reports is amplified in Question 3, Part V."

 See also Clontz, Fair Credit Reporting Manual (1971) p. 4. An official administrative interpretation of a statutory term will ordinarily be given significant value when the meaning of the term is disputed. See SEC v. Tally Industries, 2 Cir. 1968, 399 F.2d 396; Bamberger v. Clark, 1968, 129 U.S.App. D.C. 70, 390 F.2d 485.

The primary purpose of the policy in question was for business use. Even if Fernandez had some secondary thoughts about family protection these were evidently of only collateral concern.[2]

Thus, it must be considered that the report issued by Retail Credit to the named insurance companies was not a "consumer report."

But this does not dispose of the jurisdictional challenge, because the Act regulates more than "consumer reports." Section 1681g requires that a consumer reporting agency disclose to a consumer the nature, substance, and sources of information in its files with respect to that consumer. In the event that the consumer disputes the accuracy of any such information, Section 1681i establishes procedures allowing the consumer to challenge the information and requiring the reporting agency to either delete or reinvestigate. Damages are provided for in Section 1681n for willful noncompliance, and in Section 1681o for negligent noncompliance, with these sections of the Act. The mandate of sections 1681g and 1681n is not restricted to information classified as a "consumer report."

The plaintiff alleges in his complaint: "Retail has failed to correct these reports, Retail has failed to completely disclose the reports, Retail has failed to utilize the public records in making its investigation when the same were available."

Because the plaintiff has alleged wrongs for which there are potential remedies under other sections of the same act, the plaintiff shall within 15 days complete his opposition to the motion for summary judgment by a memorandum that contains specific allegations of facts that constitute violations of the Act, the statutory provisions applicable to those facts, and appropriate affidavits or depositions.

2. American Towing Co., Inc. had 100,000 authorized capital shares of which 8,700 had been issued, but only 50 of those shares were issued to Julien E. Fernandez.