James P. D'ANGELO, Plaintiff,

v.

The WILMINGTON MEDICAL CENTER, INC., a corporation of the State of Delaware, Credit Bureau of Wilmington, Inc., a corporation of the State of Delaware, Credit Bureau Associates, a corporation of the State of New Jersey, Defendants.

Civ. A. No. 79–528.

United States District Court, D. Delaware.

June 4, 1981.

Kenneth M. Roseman, D'Angelo, Ciconte & Roseman, Wilmington, Del., for plaintiff.

Thomas J. Capano, Morris, James, Hitchens & Williams, Wilmington, Del., for defendant Credit Bureau of Wilmington, Inc.

William O. LaMotte, III, David A. Jenkins, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant Credit Bureau Associates.

## OPINION

STAPLETON, District Judge:

Plaintiff brings this suit under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, alleging that defendants willfully or negligently failed to follow reasonable procedures to insure the accuracy of a consumer credit report issued on the plaintiff. Defendant Wilmington Medical Center ("WMC") was granted summary judgment by this Court on May 19, 1980. Now before the Court are the motions of defendants Credit Bureau of Wilmington, Inc. ("CBW") and Credit Bureau Associates ("Associates") for summary judgment.

Considering the evidence in the light most favorable to the plaintiff, the record discloses the following facts. On December 5, 1974, an individual was treated at WMC for injuries sustained in an accident with one Tommy Taylor.[1] Taylor instructed the hospital to bill plaintiff for payment. WMC billed the plaintiff monthly for five months, but received no response.[2] It then forwarded the bill to Barry Freedman, doing business as Credit Bureau Affiliated Services,[3] for collection. Defendants' affidavits aver that WMC contracts on a regular basis with Freedman for collection of delinquent accounts. WMC provides Freedman with the name of the alleged debtor, the amount due, and the date and nature of the services provided. No additional information was provided by WMC in this case.

CBW received the account from WMC on July 18, 1975. A first notice was mailed to plaintiff on July 29, 1975. After waiting for at least ten days, CBW reported to Associates that it had attempted to collect the debt but had received no response from the debtor. The alleged debtor was identified to Associates by name and address, with the amount and date of the obligation and the identity of the creditor also revealed. CBW later made several other unsuccessful efforts at collection.

On or about June 1, 1979, plaintiff applied to Sunmark Industries ("Sunmark") to obtain a credit card. His application was rejected and, after numerous inquiries, plaintiff determined that the rejection was based on a credit report furnished by Associates. That firm informed him that the adverse credit report was due to information provided to Associates by Freedman of CBW, stemming with Freedman's inability to collect the WMC debt. Plaintiff contacted Freedman and denied responsibility for the debt; the adverse report was removed from Freedman's file and notice of that removal was forwarded to Associates. Plaintiff subsequently obtained credit from Sunmark.

Plaintiff alleges that CBW and Associates willfully or negligently violated Section 1681e(b) of the Fair Credit Reporting Act ("the Act"). That section provides:

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Both "consumer reporting agency" and "consumer report" are terms of art defined in the Act:

The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes

---

1. There is a dispute as to whether medical services were provided directly to Taylor or to someone at his direction. Resolution of this issue is unnecessary.

2. Plaintiff states that he has never "received a bill or been contacted in regard to a bill in-

curred by any person known as Tommy Taylor." D'Angelo Aff. ¶ 3.

3. Now known as Credit Bureau of Wilmington, Inc.

authorized under section 1681b of this title. . . .

15 U.S.C. § 1681a(d).

■ CBW is in the debt collection business. It receives information about unpaid debts from its customers in order to pursue collection of those debts. If its initial efforts to collect a debt are unsuccessful, CBW forwards this information to Associates in the hope that Associates' dissemination of it to potential lenders will result in prompt payment of the debt. Experience has taught that a denial of credit because of an outstanding unpaid debt frequently leads to prompt payment of that obligation.[4] The question presented by CBW's motion is whether a debt collection firm which operates in this manner is a "consumer reporting agency" within the meaning of the Act. I conclude that the answer to this question must be in the negative.

■ The Act is directed at firms which, as a regular part of their business aggregate credit information on individual consumers, prepare credit evaluations, and report those evaluations to persons or firms who rely thereon in making decisions about extending consumer credit or offering employment. It is not, I believe, directed to those who supply information on individual debts to such consumer reporting agencies, and who are remote from those decisionmakers who rely upon "consumer reports" in making credit and other decisions. A number of factors lead me to this conclusion.

First, the Act's definition of a "consumer reporting agency" restricts the scope of that statutory concept to firms which "assemble or evaluate" consumer credit information. This implies a function which involves more than receipt and retransmission of information identifying a particular debt.

■ Moreover, the duties imposed on consumer reporting agencies by the Act are such that it is unlikely that Congress intended them to apply to persons or entities remote from the one making the relevant credit or employment decision. It will be noted that the concept of a "consumer report" encompasses only those communications of information from a consumer reporting agency which are "used or expected to be used or collected . . . as a factor in establishing the consumer's eligibility for" personal credit or insurance, employment, or certain other specified things. 15 U.S.C. § 1681a(d). It is clear, for example, that the requirements with respect to "consumer reports", do not come into play when credit information is supplied for the purpose of establishing a person's eligibility for commercial or business credit. *Wrigley v. Dun & Bradstreet, Inc.,* 375 F.Supp. 969 (N.D. Ga.1974), *aff'd mem.,* 500 F.2d 1183 (5th Cir. 1974); *Sizemore v. Bambi Leasing Corp.,* 360 F.Supp. 252 (N.D.Ga.1973); *Fernandez v. Retail Credit Co.,* 349 F.Supp. 652 (E.D. La.1972). *See also,* 116 *Congressional Record* 36,573 (1970). The duties imposed by the Act thus depend on the *purpose* for which information is used by the person who makes a decision which will affect the subject of that information. Accordingly, Section 607(a) of the Act provides that a consumer reporting agency shall require those who intend to rely on the information in decisionmaking to "identify themselves, certify the purposes for which the information is sought and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a). It goes on to require the consumer reporting agency to make an effort to verify the identity and certifications of the prospective user. A firm in the position of Associates is in a position to meet these mandates and, on the basis of the information obtained, to ascertain its responsibilities under the Act. As a practical matter, a firm in the position of CBW, which has no contact with the ultimate user of the credit information, cannot be expected to satisfy the obligations imposed by the Act on consumer reporting agencies and, accordingly, I consider it highly unlikely

---

**4.** It is my understanding that there is no material dispute regarding CBW's purpose in forwarding information to Associates. I will expect plaintiff to advise me promptly if he disputes CBW's version of the facts in this area.

that Congress intended to impose them on CBW. This case provides a striking example of the impracticality of a holding that one in CBW's position is a consumer reporting agency under the Act. At the time CBW provided the information to Associates, D'Angelo had not even thought of applying for the Sunmark credit card. CBW could have no expectation one way or the other as to the kind of use to which an eventual credit report would be put.

Similar practical problems are presented by the provisions of the Act imposing duties on the users of a consumer report. Section 615 of the Act, for example, provides that whenever credit or insurance for personal purposes or employment is denied, or the charge for such credit or insurance is increased "because of information contained in a consumer report from a consumer reporting agency, the user of the report shall so advise the consumer . . . and supply the name and address of the consumer reporting agency." 15 U.S.C. § 1681m(a). It imposes no significant burden upon a user of credit information to supply the name and address of the credit information service with which it deals. A far greater burden would be imposed upon a user, however, by a requirement that it identify sources of its information more remote than its information.

The situation of Associates is different. Associates assembles and disseminates consumer credit information and is the type of consumer credit reporting agency which the Act seeks to monitor. It contends, however, that events giving rise to this action are not within the scope of the Act because the plaintiff sought commercial as compared to personal credit. Plaintiff counters that there is at least a material dispute of fact as to whether he applied to Sunmark primarily for personal credit or primarily for commercial credit. While I agree with plaintiff that there is a dispute of fact with respect to his subjective intent when he filed his application, I conclude that this is not a material issue.

■ Plaintiff accuses Associates of preparing a consumer report without following reasonable procedures to assure maximum possible accuracy of the information about plaintiff. Accordingly, there can be no liability and Associates is entitled to summary judgment if it did not prepare a "consumer report" as that concept is employed in the Act. As earlier noted, the Act defines a "consumer report" to include only those communications of credit information by a consumer reporting agency which are used, are expected to be used, or are collected, by a decisionmaker for the purpose of establishing the consumer's eligibility for "credit . . . to be used primarily for personal, family, or household purposes." Because the Act is thus designed to protect the consumer *only* in his individual and personal capacity, in those cases in which the plaintiff applied for credit for use in commercial purposes, the plaintiff is not a member of the class for whose benefit the Act was adopted and cannot recover. *Wrigley, supra,* 375 F.Supp. at 971; *Sizemore, supra,* 360 F.Supp. at 254–55; *Fernandez, supra,* 349 F.Supp. at 654. But this does not mean, however, that the plaintiff's subjective intent controls the result in cases where he or she intends to use the credit for personal purposes.

The Act focuses upon the *user* of consumer information (here Sunmark) and its purpose in obtaining and using that information. If it collects and uses the information for the purpose of deciding upon a proposed extension of primarily personal credit, the communication from the consumer reporting agency is a consumer report within the meaning of the Act and both the agency and user have responsibilities under the Act. 15 U.S.C. § 1681e(a). If the purpose of the user involves an application for commercial credit, on the other hand, those responsibilities do not arise. For this reason, among others, the intent of the user with respect to information sought from a consumer reporting agency must be certified to that agency. Because of this focus on the use to which the information is put by the user, I conclude that Congress must have intended that the private-commercial dichotomy be drawn on the basis of the

credit application which the consumer report is used to evaluate. The conclusion is of controlling significance in this case because the plaintiff, by checking a box on his credit card application, affirmatively represented that:

This account will be used for business, commercial, and/or agricultural purposes, either wholly or primarily.

The alternative statement of purpose, which the plaintiff did *not* check, was that the account would be used for "personal, family and/or household purposes, either wholly or primarily." Moreover, there was no other information submitted on the application which would in any way cast doubt upon plaintiff's affirmative representation. Thus, Sunmark clearly used the information supplied by Associates to evaluate an application for *non*-personal credit. Since this was the actual use to which the information was put and since there is nothing in the record to suggest that there was any reason to expect this information was being collected or would be used by Sunmark for any other purpose, it follows that this case does not involve a consumer report issued by Associates. Accordingly, summary judgment will be entered in its favor as well as in the favor of CBW.