Charles E. DOYLE *v.* CHILTON CORPORATION and CBM OF ARKANSAS, INC. d/b/a CREDIT BUREAU SERVICES and WORTHEN BANK AND TRUST CO., N.A.

85-228                                    711 S.W.2d 463

Supreme Court of Arkansas
Opinion delivered June 16, 1986
[Rehearing denied July 7, 1986.]

*Nelwyn Davis Law Office*, by: *Nelwyn Davis*, for appellant.

*Friday, Eldredge & Clark*, by: *Donald H. Bacon*, for appellee Chilton Corp. and CMB of Arkansas, Inc. d/b/a Credit Bureau Services.

*Wright, Lindsey & Jennings*, for appellee Worthen Bank & Trust Co., N.A.

DAVID NEWBERN, Justice. The appellant Charles E. Doyle brought an action against the appellees after he was denied credit he sought to finance a motor home. Appellee Chilton Corporation is the parent corporation of appellee CBM of Arkansas, Inc., d/b/a Credit Bureau Services. The appellant alleged that Credit Bureau Services, in compiling a credit report, violated the Fair Credit Reporting Act, codified at 15 U.S.C. §§ 1681-1681t. He alleged that Worthen Bank and Trust Co., N. A., had violated the reporting provisions of the same Act. Summary judgment was awarded to the appellees because the court found the Act was inapplicable as the credit was sought for commercial rather than personal purposes. The main question we must resolve is whether

the court was correct in its interpretation of the Act and was thus correct in concluding there was no remaining issue of material fact to be determined. Ark. R. Civ. P. 56(c). We hold the Act was not properly construed, and because there are remaining material issues of fact the judgment must be reversed and the case remanded.

In their summary judgment motion the appellees relied on the deposition of the appellant which revealed these facts: The appellant and his brother, Ronnie Doyle, wished to purchase a motor home which they would own jointly. They found one they wanted to purchase at a dealership. They arranged to purchase it and asked the dealer to arrange the financing. A credit application was filled out, and the dealer submitted it to Worthen. Worthen had a credit check performed by Credit Bureau Services. When Charles returned to the dealer he was informed the financing request had been rejected by the bank.

The dealer gave Charles no reason for the refusal of credit. A few days later, Charles called Worthen and was told the refusal "had to do with the . . . Credit Bureau saying something about a bad credit card." Charles then called Credit Bureau Services and was told the information would not be revealed on the telephone but that he would have to write to inquire. He wrote to Credit Bureau Services and received a credit sheet from which he concluded the poor credit record revealed was that of another Charles Doyle. The credit sheet referred to two accounts with J.C. Penney Co., differentiated by their computer identification numbers. One was the account of the appellant and his wife. The other account, in which there was a delinquency, was that of the other Charles Doyle. The appellant called the agency again to inform it of the mistake. He was told that Credit Bureau Services could not make the change and he would have to straighten it out with J.C. Penney Co. The information he received by telephone from the J.C. Penney Co. Dallas office was that J.C. Penney Co. was not at fault, and the credit agency would have to straighten it out.

Charles Doyle then hired an attorney to pursue the matter, and his credit file at Credit Bureau Services was eventually changed to remove the negative part but not until after interest rates had gone up dramatically and he had decided not to obtain

financing for the purchase.

### 1. The Statute

■■ Section 1681e(b) contains the language upon which the appellant's claim is based. It provides:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

Thus it becomes crucial to know whether Credit Bureau Services, the consumer reporting agency, in this case prepared a "consumer report" as defined by the Act. Section 1681a is the definitions section. It provides, in relevant part:

> (d) The term "consumer report" means any . . . communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, [or] credit capacity . . . which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit . . . to be used primarily for personal, family, or household purposes. . . .

### 2. The Claim Against Credit Bureau Services

Credit Bureau Services argued below, and they argue here, that because Mr. Doyle stated in his deposition that he intended to use the motor home primarily in his business the loan in prospect was a commercial loan rather than a consumer loan and that, therefore, the Act is inapplicable and summary judgment was appropriate. Credit Bureau Services cites *Sizemore* v. *Bambi Leasing Corp.*, 360 F. Supp. 252 (N.D. Ga. 1973) in which it was held that an application for credit made by "G. Sizemore Company" was for commercial purposes and thus not within the coverage of the Act. In that case the credit of the company proved to be satisfactory, but a subsequent report on Mr. Sizemore's personal credit rating was not, and the credit was thus denied. Although it is troublesome that the credit was denied on the basis of Mr. Sizemore's personal credit rating, the holding of the case does not support Credit Bureau Services' argument here because the application of Mr. Doyle was not made in the name of his

company or any company for which he worked. Any credit agency or user was obviously on notice of the commercial nature of Mr. Sizemore's application.

Also cited is *Ley* v. *Boron Oil Company*, 419 F. Supp. 1240 (W.D. Pa. 1976). In that case the court held that a report by a credit agency of certain personal information about an attorney was not a "consumer report" because it was not collected, used or intended to be used for credit purposes. Rather, it was requested and collected to obtain information about an attorney who had threatened Boron with suit. No credit purpose whatever was involved. The case is thus easily distinguishable from this one.

In *D'Angelo* v. *Wilmington Medical Center*, 515 F. Supp. 1250 (D. Del. 1981), also cited by Credit Bureau Services, the plaintiff contended he intended to use the credit for which he applied for personal purposes and thus the court should not have rendered summary judgment against him on his claim under the act although on his credit application he had checked a box indicating the credit was for commercial purposes. The court said:

> The Act focuses on the user of consumer information (here Sunmark) and its purpose in obtaining and using that information. If it collects and uses the information for the purpose of deciding upon a proposed extension of primarily personal credit, the communication from the consumer reporting agency is a consumer report within the meaning of the Act and both the agency and user have responsibilities under the Act. 15 U.S.C. § 1681e(a). If the purpose of the user involves an application for commercial credit, on the other hand, those responsibilities do not arise. For this reason, among others, the intent of the user with respect to information sought from a consumer reporting agency must be certified to that agency. Because of this focus on the use to which the information is put by the user, I conclude that Congress must have intended that the private-commercial dichotomy be drawn on the basis of the credit application which the consumer report is used to evaluate. [515 F. Supp. at 1254-1255.]

In the case before us we have no idea what was on the credit application. The application is not in the record. How can we

know, and how could the trial court have known, what Worthen knew about the purpose for which it was to use the information? We are similarly in the dark about what Credit Bureau Services knew, when it collected the information, about the purpose for which it was to be used. All we know for purposes of deciding this case, is that Mr. Doyle's subjective intent, which the *D'Angelo* case says is irrelevant, was to use the motor home in his business but he applied in his own name and did not apply in the name of a business. If we focus on the purpose of Worthen, the user of the consumer information, as the statute requires, we are left with a material fact question.

The remark of the court in the *D'Angelo* case, quoted above, that the intent of the user must be certified to the collecting agency, states the requirement of § 1681e(a). When this matter is tried, presumably Worthen's certification to Credit Bureau Services as to whether the loan was to be for commercial or personal purposes will be in evidence and will be significant.

We are persuaded that the summary judgment motion of Credit Bureau Services should not have been granted. As the statute says, the purpose for which the report was collected and used or expected to be used is determinative of whether the Act applies. Those descriptions focus on the objective indicia of the purposes of the user and the collecting agency and not on the intent of the consumer. Even if the report is ultimately used for a purpose other than a personal, family or household credit application, it is a "consumer report" to which the Act applies if the information in the report was compiled and maintained for the purposes stated in § 1681b. *Boothe* v. *TRW Credit Data*, 523 F. Supp. 631 (1983). Whether the report in this case was compiled and maintained for those purposes is a remaining material issue of fact.

### 3. The Claim Against Worthen Bank and Trust Co.

The basis of the summary judgment in favor of Worthen was that the Act was inapplicable, therefore, the claim against Worthen for violation of § 1681n will depend upon the factual determination discussed above.

Worthen, in arguing the inapplicability of the Act, relies primarily on *Matthews* v. *Worthen Bank and Trust Co.*, 741 F.2d

217 (1984). There the plaintiff wanted to lease space in a "mini mall" for a liquor store. Worthen obtained a credit report on the plaintiff after the mall owners had discussed the prospective lease with a Worthen officer. The owners had a loan from Worthen which was being paid mainly from mall proceeds. In that case it is clear that Worthen, the user, knew of the commercial nature of the transaction, but beyond that, the opinion does not say that the information was to be used for credit purposes. The case becomes even less persuasive when it is realized that the credit report contained no derogatory information about the plaintiff. Speaking of the *Matthews* case, Worthen's brief says:

> The court found that the FCRA does not apply when a consumer's credit report is *released* for a business purpose. The purpose for which the information was originally *collected* was not even deemed worthy of discussion by the court. [Emphasis in the original.]

In the first place, we do not know if it was argued that the purpose of collection was significant. Secondly, the per curiam opinion said:

> We find that this particular transaction was exempt from the FCRA because the credit report was used solely for a commercial transaction. [741 F.2d at 219.]

The term "released" is not used in the opinion. The term "used," of course, appears in § 1681a(d) and, as noted above, becomes the focus of inquiry as to the applicability of the Act.

Worthen's second argument is that even if the Act applies, Worthen complied when it gave Mr. Doyle the information after his request. If, upon trial of this case, the court finds the Act was applicable, presumably there will be more substantial evidence as to whether Worthen's reply to Mr. Doyle's question constituted compliance with § 1681m.

### 4. Conclusion

When the purpose of the Fair Credit Reporting Act is examined it becomes clear it could apply in this case. Section 1681(b) provides:

> (b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures

for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

The information upon which the appellant was denied credit was obtained from a credit card account with the J.C. Penney Co. The appellant testified it was a charge account used primarily by his wife. It is obviously the sort of information collected and disseminated daily by credit reporting agencies with respect to consumer credit applications. It is the sort of information as to which § 1681e(b) requires "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

Reversed and remanded.