James J. PAPPAS, Plaintiff,

v.

CITY OF CALUMET CITY, a municipal corporation, Defendant.

No. 96 C 0551.

United States District Court,
N.D. Illinois,
Eastern Division.

June 30, 1998.

Patrick Joseph O'Malley, Chicago, IL, for Plaintiff.

Ronald Kawanna, Jr., Lawrence P. Gulotta, Gulotta & Kawanna, Calumet City, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff James J. Pappas ("Pappas") brings this lawsuit against the City of Calumet, Illinois ("City"). Pappas alleges that the City violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by obtaining his credit report under false pretenses. Both Pappas and the City move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the court grants Pappas' motion and denies the City's motion.

### Background

Pappas is the owner and president of Capital Towing, which is an automobile towing company located in Calumet City, Illinois. During the regular course of its business, Capital Towing accepted towing referrals from the Calumet City Police Department ("Calumet Police"). Basically, the Calumet Police used Capital Towing to enforce the City's parking ordinances. If a vehicle violated a Calumet City parking ordinance and required towing, the City referred the towing job to Capital Towing, who responded by towing the vehicle. Capital Towing did not contract with the City for these referrals, nor did the City pay Capital Towing for towing vehicles that violated the City's parking ordinances. Instead, Capital Towing collected its fees for towing vehicles directly from the vehicle owner when the owner retrieved the vehicle from Capital Towing.

In May 1995, Calumet City Chief of Police George Vallis ("Vallis") suspected that Capital Towing was not properly maintaining the vehicles that it towed for the City. Vallis based this concern on verbal complaints he received from individuals whose vehicles Capital Towing had towed. Those individuals complained that Capital Towing had either damaged their vehicles or lost personal property they had in their vehicles. Vallis also learned that an insurance company had recently accused Pappas of fraud.

In light of the complaints about Capital Towing and his suspicions about Pappas, Vallis told Calumet Police Sergeant O'Meara ("O'Meara") to obtain a credit report on Pappas. O'Meara requested Pappas' credit report from credit reporting agency TRW. According to TRW's records, O'Meara told TRW that he was obtaining Pappas' credit report for "employment purposes." Pappas eventually discovered that the Calumet Police had performed a credit check after he applied for a credit card and the credit bureau offered him a copy of the agencies that checked his credit rating.

Pappas brought this lawsuit as a result of the Calumet Police's request of his credit report. Pappas alleges that the Calumet Police violated the FCRA by obtaining his credit report under false pretenses. Both Pappas and the City now move the court to enter summary judgment in their favor under Rule 56 of the Federal Rules of Civil Procedure.

### Analysis

The court will render summary judgment only if the factual record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Bratton v. Roadway Package Sys., Inc.*, 77 F.3d 168, 173 (7th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court will not render summary judgment if "a reasonable jury could return a verdict for the nonmoving party." *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Bratton*, 77 F.3d at 171 (citation omitted); *Sullivan*, 78 F.3d at 325 (citation omitted).

On a motion for summary judgment, the moving party "bears the initial burden of showing that no genuine issue of material fact exists." *Hudson Ins. Co. v. City of Chicago Heights*, 48 F.3d 234, 237 (7th Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Since the parties filed cross-motions for summary judgment, each party assumes the role of the moving party and the nonmoving party. Therefore, if one party demonstrates that no genuine issue of material fact exists, then the burden shifts to the opposing party which "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *accord, NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 234 (7th Cir.1995) (citations omitted). Whether the City unlawfully obtained the credit report is a legal question that the court may resolve on summary judgment. *See Zeller v. Samia*, 758 F.Supp. 775, 781–82 (D.Mass.1991).

The FCRA is a consumer protection statute which requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). Much of the FCRA regulates the behavior of credit reporting agencies. However, "[e]ven consumer reporting agencies acting in complete good faith cannot prohibit illicit use of consumer information if users are not bound to obtain consumer reports only for permissible purposes." *Hansen v. Morgan*, 582 F.2d 1214, 1220 (9th Cir.1978). Accordingly, the FCRA also extends to the conduct of parties who request credit information.

Any person who willfully or negligently fails to comply with any requirement under the FCRA with respect to any consumer may be civilly liable to that consumer. *See* 15 U.S.C. §§ 1681n, 1681o, and 1681q. Consequently, if a user acquires a consumer credit report under false pretenses in violation of § 1681q, then the consumer may recover civil damages from that user. *See Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 369 (6th Cir.1984); *Boothe v. TRW Credit Data*, 557 F.Supp. 66, 70–71 (S.D.N.Y.1982) (citing *Hansen*, 582 F.2d at 1216).

For Pappas to prevail on his summary judgment motion, he must demonstrate that no genuine issue of material fact exists over four elements. First, Pappas must show that the Calumet Police Department is a "user" within the FCRA. Since the City admits that it is in fact a "user" under the FCRA, no genuine issue of material fact exists concerning this element. Second, Pappas must demonstrate that the credit report obtained by the Calumet Police is a "consumer report" under the FCRA. Third, Pappas must establish that the Calumet Police obtained his credit report under false pretenses. And fourth, Pappas must show that there is no dispute of fact that the Calumet Police acted willfully or negligently when it obtained his consumer report under false pretenses. The court addresses each of the disputed elements of Pappas' claim separately.

### I. CONSUMER REPORT

The City first argues that the credit report it obtained about Pappas was not a "consumer report" under the FCRA. In order for the FCRA to apply, the report containing information on Pappas must have been a consum-

er report. The FCRA defines a consumer report as:

(1) any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under § 1681b of this title.

15 U.S.C. § 1681a(d)(1)(A) –(C).

■ A consumer can establish that a particular report is a consumer report if: "(1) the person who requests the report actually uses the report for one of the 'consumer purposes' set forth in the FCRA; (2) the consumer reporting agency which prepares the report 'expects' the report to be used for one of the 'consumer purposes' set forth in the FCRA; or (3) the consumer reporting agency which prepared the report originally collected the information contained in the report expecting it to be used for one of the 'consumer purposes' set forth in the FCRA." *Ippolito v. WNS, Inc.,* 864 F.2d 440, 449 (7th Cir.1988) (citations omitted). The "consumer purposes" alluded to by the Seventh Circuit include establishing the consumer's eligibility for credit, insurance, employment, or a license or other benefit granted by a governmental agency. 15 U.S.C. § 1681b(a)(3). To resolve a conflict in the statute, "the definition of a 'consumer report' has essentially been limited to information that is 'used or expected to be used or collected' in connection with a 'business transaction' involving one of the 'consumer purposes' set out in the statute, that is, eligibility for personal credit or insurance, employment purposes, and licensing." *Ippolito,* 864 F.2d at 451.

Here, TRW's records state that the Calumet Police told TRW that they were obtaining Pappas' credit report for "employment purposes." Furthermore, Vallis testified in his deposition that O'Meara obtained the report by telling TRW that the report was for employment purposes. The record contains no evidence that TRW expected the Calumet Police to use the report for any purpose other than employment purposes.[1] Under these facts, there is no genuine dispute of fact that TRW expected the Calumet Police to use Pappas' credit report for one of the consumer purposes set forth in the FCRA. "[I]f the information was used or **expected to be used** to assess an individual's eligibility for personal credit, insurance, or employment, then the information constitutes a 'consumer report,' and is governed by FCRA." *Zeller,* 758 F.Supp. at 780 (emphasis added) (citing *Ippolito,* 864 F.2d at 449). Since there is no dispute that TRW expected the Calumet Police to use Pappas' credit information for employment purposes, that credit report constitutes a consumer report under the FCRA.

Although the undisputed facts clearly establish that TRW expected the Calumet Police to use Pappas' credit report for employment purposes, the City insists that the report it obtained was not a consumer report. Specifically, the City contends that it obtained Pappas' credit report for the purpose of investigating Pappas' company, Capital Towing. The City therefore argues that "[s]ince the report was compiled solely for the purpose of ordering an investigation of … Capital Towing … it is not a consumer report even if it contains information about the Plaintiff." In support of this argument, the City cites a string of cases holding that the FCRA does not apply when a user obtains a credit report for a purpose related to " 'a consumer's business transactions.' " *See Wrigley v. Dun & Bradstreet, Inc.,* 375 F.Supp. 969, 971 (N.D.Ga. 1974) (quoting *Sizemore v. Bambi Leasing Corp.,* 360 F.Supp. 252, 254 (N.D.Ga.1973)); *see also Fernandez v. Retail Credit Co.,* 349 F.Supp. 652, 654 (E.D.La.1972) (a credit report used to establish eligibility for a per-

---

1. The FCRA defines the term "employment purposes" as "the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." 15 U.S.C. § 1681a(h).

sonal insurance policy for business purposes is not a consumer report).

The court finds several reasons to reject the City's argument that the credit report it obtained was not a consumer report. First, the City's argument asks the court to disregard the FCRA's plain language. The FCRA defines a "consumer report" as a credit report "which is used *or expected to be used* or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for one of the stated consumer purposes. 15 U.S.C. § 1681a(d)(1)(A)–(C) (emphasis added). As the Seventh Circuit explained in *Ippolito,* the plain language of this definition requires courts to inquire into the reasons the consumer reporting agency expects the user to use the credit report. *See Ippolito,* 864 F.2d at 449–50 & n. 10 (rejecting analysis of *Sizemore v. Bambi Leasing Co.,* 360 F.Supp. 252 (N.D.Ga.1973)). Contrary to the mandate of *Ippolito,* the City asks the court to look only at the Calumet Police's actual reasons for obtaining Pappas' credit report and to disregard TRW's expectations. However, because the FCRA requires the court to consider the purpose for which TRW expected the Calumet Police to use Pappas' credit report, the court declines the City's invitation to focus solely on the Calumet Police's purpose for obtaining the credit report.

As long as TRW expected the Calumet Police to use Pappas' credit report for employment purposes, the Calumet Police Department's "actual reason" for obtaining Pappas' credit report is irrelevant. *See Zeller,* 758 F.Supp. at 780. Whether a credit report constitutes a consumer report under the FCRA depends as much on the consumer reporting agency's expectation as it does on the requesting party's actual intention. *See* 15 U.S.C. § 1681a(d)(1); *Ippolito,* 864 F.2d at 449. The Calumet Police told TRW that Pappas' credit report was going to be used for employment purposes—a legitimate "consumer purpose" under the FCRA. Because the Calumet Police requested the report for employment purposes, TRW expected the

Calumet Police to use the report for a consumer purpose. Accordingly, there is no genuine factual dispute over the issue of whether the Calumet Police obtained Pappas' consumer report.

The court also finds the City's reliance on *Wrigley, Sizemore,* and *Fernandez* misplaced because those courts confronted different factual situations. Specifically, *Wrigley, Sizemore,* and *Fernandez* all involved plaintiffs who had completed applications for either commercial credit or business related insurance. Those courts therefore applied and interpreted 15 U.S.C. § 1681a(d)(1)(A) [2] which pertains to a consumer's eligibility for "credit or insurance to be used primarily for personal, family, or household purposes." *Id.* In contrast, Pappas never applied for any commercial credit or business related insurance that would have prompted the Calumet Police to investigate Pappas' credit report. Thus, because Pappas never applied for business credit or insurance, the "business transaction" exception enforced by *Wrigley, Sizemore,* and *Fernandez* has no factual bearing on this case.

Finally, under the facts of this case, the court must reject the City's contention that the FCRA does not apply because "the report was compiled solely for the purpose of ordering an investigation of the Plaintiff's business." This argument and the facts of this case suggest great potential for the abuse of police power to circumvent the FCRA. One of the primary reasons Congress enacted the FCRA was to protect individual credit privacy. *See generally* Mary A. Bernard, Case Comment, *Houghton v. New Jersey Manufacturers Insurance Co.: A Narrow Interpretation of the Scope Provisions of the Fair Credit Reporting Act Threatens Consumer Protection,* 71 Minn.L.Rev. 1319, 1326 n. 41 (1987). The FCRA contains provisions specifically directed at law enforcement agencies' legitimate investigative reasons to obtain credit reports. Mainly, § 1681b(a)(1) authorizes consumer reporting agencies to furnish consumer reports "[i]n response to the order of a court having jurisdiction to

**2.** The FCRA's statutory sections have been reorganized since those cases were decided. The

court cites the statute as it is currently codified.

issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury." *Id.* If the Calumet Police had a legitimate reason to "investigate" Capital Towing or Pappas, the police could have requested a court order authorizing TRW to release the report. The Calumet Police chose not to take this route. Instead, the Calumet Police told TRW that they were obtaining Pappas' credit report for employment purposes and avoided the FCRA's apparent requirement that law enforcement officials obtain a court order before procuring a credit report for investigative purposes. Allowing police to cloak investigative purposes under the guise of employment purposes would undermine the FCRA's intent to protect individual privacy interests as well as negate the statutory scheme authorizing courts to order consumer reporting agencies to furnish consumer reports. Thus, because holding that the FCRA does not apply in this case could lead to potential abuses of police power, the court rejects the City's argument that it did not obtain Pappas' consumer report.

## II. FALSE PRETENSES

█ The City next argues that it did not obtain Pappas' consumer report under false pretenses because it obtained the report for a permissible purpose.[3] Under the FCRA, a consumer reporting agency may furnish a consumer report to a person which it has reason to believe intends to use the information for one of several permissible purposes. *See* 15 U.S.C. § 1681b(a)(1)–(3). One of the permissible purposes for which a user may obtain a consumer report is "a legitimate business need for the information in connection with a business transaction that is initiated by the consumer." 15 U.S.C. § 1681b(3)(F)(i).

█ The City argues that it obtained Pappas' credit report for a legitimate business purpose. "The term 'legitimate business needs' and 'in connection

with a business transaction' refer to the needs and objective of the person to whom the report is furnished, not the business needs of the person about whom it is furnished." *Fernandez*, 349 F.Supp. at 654–55. Therefore, "legitimate business need" refers to the Calumet Police's need for the report. Furthermore, when determining whether a legitimate business need constitutes a permissible purpose under the FCRA, the court must construe the stated business need broadly. In order to exclude business credit reports, the court interprets "legitimate business needs" narrowly for the purposes of defining a consumer report. However, once the court finds a report to be a "consumer report" within the FCRA § 1681b(3)(E)'s broader language takes precedence over the more restrictive language. This interpretation allows a "consumer report" to be used for a "legitimate business purpose." *Ippolito*, 864 F.2d at 451 n. 11.

█ Here, the legitimate business needs of the Calumet Police must be in connection with a business transaction it had with Pappas. Generally speaking, a "business transaction" under the FCRA refers to an exchange of goods or service for money. For example, in *Estiverne v. Sak's Fifth Ave.*, 9 F.3d 1171, 1173 (5th Cir.1993), the court held that a department store had a legitimate business need to obtain a consumer report when deciding whether to accept a customer's personal check as payment for a watch. *Id.* Similarly, in *Allen v. Kirkland & Ellis*, No. 91 C 8271, 1992 WL 206285, at *2 (N.D.Ill. Aug.17, 1992), Judge Holderman ruled that "preparation for litigation regarding a business debt qualifies as a permissible purpose." *Id.* Judge Holderman explained that obtaining a credit report in those circumstances constituted a business need in connection with a business transaction because the lawsuit was based on the collection of allegedly unpaid accounts. *Id.* Thus, when one party may be subject to a monetary loss,

---

**3.** Like other courts, this court interprets the concepts of "false pretenses" and "permissible purposes" interchangeably. That is, if a user obtains a consumer report under "false pretenses," that means the user did not have a "permissible purpose" for procuring the report. Similarly, if

a user obtains a consumer report for a "permissible purpose," that user could not have obtained the report under "false pretenses." *See, e.g., Zamora v. Valley Fed. Sav. & Loan Assoc.*, 811 F.2d 1368, 1370 (10th Cir.1987).

that party may perform a credit check to ensure that the debt will be paid.

In this case, there is no evidence that the Calumet Police had a legitimate business need for Pappas' consumer report in connection with a business transaction that Pappas initiated. *See* 15 U.S.C. § 1681b(a)(3)(F)(i). First of all, there is no evidence that *Pappas* had any business relationship with the Calumet Police. Rather, the only relationship evidenced in this case is a towing referral relationship between the Calumet Police and *Capital Towing.* The City fails to offer any legitimate business need to investigate Pappas' credit rating when *Capital Towing,* a separate legal entity, had been performing the referral towing jobs for the City. Thus, the undisputed facts demonstrate that there was no business relationship between the City and Pappas.

Nevertheless, assuming the City had a legitimate business reason to investigate Pappas' credit, the record contains no evidence of any business transaction between Pappas and the City. Neither Pappas nor Capital Towing ever contracted to tow cars for the City. The City never paid Pappas or Capital Towing any money for towing the cars that Capital Towing removed for the City. Additionally, there is no evidence that Pappas or Capital Towing ever paid the City in exchange for the City's referrals to Capital Towing. In short, there is no evidence that Pappas or Capital Towing ever initiated a business transaction with the City. The court therefore concludes that there is no genuine issue of material fact that the City obtained Pappas' credit report under false pretenses. The undisputed evidence establishes that the City did not have a legitimate business need to obtain Pappas' credit report in connection with a business transaction the City had with Pappas.

## III. WILLFULNESS

The court also finds no genuine dispute of material fact that the Calumet Police willfully obtained Pappas' consumer report under false pretenses. The record unequivocally shows that O'Meara requested the report for employment purposes. The term "employment purposes" refers to a consumer report that evaluates a consumer for employment, promotion, reassignment, or retention as an employee. *See* 15 U.S.C. § 1681a(h). The nature of the relationship between Pappas and the City illustrates that an employment relationship did not exist between the City and Pappas.

The Calumet Police requested Capital Towing to tow cars that violated the City's parking laws. Capital Towing did not pay the City for these referrals. Additionally, the City did not pay Capital Towing for removing the vehicles. Pappas maintained his business by charging the vehicle owner for the towing service when the owner retrieved the vehicle. Pappas and the Calumet Police had a mutually beneficial relationship; however, nothing about their relationship suggests that the Calumet Police or the City ever employed or considered employing Capital Towing or Pappas. Likewise, the record contains no evidence that the City intended to enter into an employment relationship with Capital Towing or Pappas.

Since no employment relationship existed between the City and Pappas, and officials at the Calumet Police knew that the City did not have an employment relationship with Pappas, the Calumet Police willfully obtained Pappas' credit report under false pretenses. The Calumet Police intentionally requested the report for an investigation unrelated to any employment purpose. However, the Calumet Police told TRW that it was requesting Pappas' credit report for employment purposes even though the Calumet Police knew no such relationship existed. Under these facts, there is no genuine issue of material fact that the Calumet Police willfully requested the report for an investigation of Pappas and misrepresented that they obtained his credit report for employment purposes.

## IV. DAMAGES, COSTS, AND ATTORNEY'S FEES

Now that the court has determined that there is no dispute of fact that the Calumet Police willfully obtained Pappas' credit report under false pretenses, the court addresses

the issue of damages. The FCRA defines damages for willful noncompliance as:

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 not more than $1,000;

(B) ...

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n. The court must therefore determine the amount of actual and punitive damages to assess.

The undisputed facts show that the Calumet Police willfully requested Pappas' consumer report under false pretenses. The Calumet Police told TRW that were obtaining Pappas' consumer report for "employment purposes." After the Calumet Police obtained Pappas' credit report, they used it in an investigation of Capital Towing. This use of Pappas' credit information was entirely unrelated to any employment relationship that the Calumet Police had or were contemplating with Capital Towing.

The court recognizes, however, that the Calumet Police and Capital Towing, had a mutually beneficially relationship. In light of this relationship, the court appreciates that the City had an interest in knowing whether Capital Towing had damaged cars or stolen property from those cars it towed for the City. However, violating federal law by obtaining Pappas' personal credit history under false pretenses is not an appropriate manner in which to investigate Capital Towing's activities. Thus, while the Calumet Police had a purpose for requesting Pappas' credit report, that purpose does not constitute a permissible purpose under the FCRA.

 Based on the circumstances of the case, the court awards Pappas $500 in actual damages and $5,000 in punitive damages. These damages adequately reflect the Calumet Police's willful misrepresentation to TRW by requesting Pappas' credit report under false pretenses. These amounts also reflect the fact that the Calumet Police did have some relationship with Pappas through Capital Towing.

 The FCRA also requires the court to award Pappas his court costs and attorney's fees. The court encourages the parties to fairly resolve the attorney's fees and costs issues without the court's further involvement. In the event that the parties cannot resolve these issues on their own, the court will award attorney's fees only after Pappas files an appropriate petition for attorney's fees supported by an affidavit. Pappas' fee petition and affidavit should request reasonable attorney's fees calculated by multiplying reasonable amounts of time spent on this litigation by a reasonable hourly rate. Pappas should also file an appropriate bill of costs with his petition for attorney's fees. If the parties are unable to settle these issues, Pappas must file his petition for attorney's fees and bill of costs within 30 days after the date of this opinion. Any objections the City has to Pappas' fee petition and bill of costs must be filed no later than 15 days after Pappas files his fee petition and bill of costs. Any briefs the parties file must not exceed twelve pages and must comply with the local rules in all other respects.

### Conclusion

The court grants Pappas' motion for summary judgment and denies the City's motion for summary judgment. The court enters judgment in Pappas' favor in the amount of $5,500.00.