**Michael BELSHAW, Plaintiff,**

v.

**CREDIT BUREAU OF PRESCOTT et al.,
Defendants.**

**Civ. No. 73-634-PCT-CBR.**

United States District Court,
D. Arizona.

May 2, 1975.

Harrison, Myers & Singer, P. C., Robert D. Myers, Phoenix, Ariz., for plaintiff.

Laurence F. Nugent, Phoenix, Ariz., for defendant Credit Bureau of Prescott.

Jennings, Strouss & Salmon, William T. Birmingham, Phoenix, Ariz., for defendant Favour & Quail.

## ORDER

RENFREW, District Judge, Sitting by Designation.

Plaintiff brought this action pursuant to the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.) and also claimed invasion of privacy. Jurisdiction of the federal claim is alleged under 15 U.S.C. § 1681p, and plaintiff asks the Court to exert pendent jurisdiction over the state claim. Defendants have moved to dismiss the action.

### Factual Background

On October 16, 1973, plaintiff's original complaint was filed, naming the

Credit Bureau of Prescott (Credit Bureau) as a defendant and other, unknown defendants. He alleged that defendants illegally prepared and procured one or more investigative consumer reports and/or consumer reports concerning him, to his substantial damage. On January 29, 1974, defendant Favour & Quail (a law firm in Prescott served as Able & Baker Partnership I) filed alternative motions to dismiss, strike, and for a more definite statement. On December 18, 1974, Judge Skopil denied defendant Favour & Quail's motion to dismiss and granted its motion to strike and motion for a more definite statement.

On December 30, 1974, plaintiff filed his first amended complaint, which alleged four claims:

1. Violation of 15 U.S.C. § 1681 et seq. by defendant Credit Bureau and other, unknown defendants:

2. Violation of 15 U.S.C. § 1681 et seq. by defendant Favour & Quail and other, unknown defendants;

3. Invasion of plaintiff's privacy by defendant Credit Bureau and other, unknown defendants; and

4. Invasion of plaintiff's privacy by defendant Favour & Quail and other, unknown defendants.

Plaintiff alleged that defendants caused investigative consumer reports and/or consumer reports to be made about him

without complying with the Act, and that the practices utilized in making and using these reports, *inter alia*, invaded his privacy. Plaintiff asks for general, special and punitive damages totaling $1,020,000 in each of his four claims.

In January, 1975, both named defendants filed motions to dismiss, contending that no consumer report was prepared concerning plaintiff, thus there was no violation of the Act, and that this Court has no jurisdiction over the state claim. These motions were heard on February 24, 1975.

*Plaintiff's First Claim*

Plaintiff's first claim for relief alleged, *inter alia*, that defendant Credit Bureau furnished one or more investigative consumer reports and consumer reports to one or more of the defendants in violation of § 1681b and § 1681e of the Act.

Plaintiff also contends that defendant Credit Bureau refused to disclose the nature and substance of the information in its files when requested to do so by plaintiff, in violation of § 1681g of the Act.[1]

Defendant Favour & Quail contends that the report[2] defendant Credit Bureau caused to be made was not a consumer report[3] (although it is uncontested that defendant Credit Bureau is a credit reporting agency as defined by

---

1. In its motion to dismiss the first amended complaint, defendant Credit Bureau does not clearly set forth its position with respect to plaintiff's first claim for relief. Defendant Favour & Quail, however, challenges the applicability of the Act to either defendant by asserting that no "consumer report" was ever prepared concerning plaintiff, thus raising at the outset the issue whether a "consumer report" within the meaning of the Act was prepared.

2. Counsel for plaintiff conceded that he knew of only one consumer report and that, to his knowledge, no investigative consumer report was ever procured or prepared by either defendant.

3. A consumer report is defined in § 1681a(d) of the Act as:

" * * * any written, oral, or other communication of any information by a consumer reporting agency * * * which is used or expected to be used * * * for (1) credit or insurance * * *, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title. * * *"

An investigative consumer report is defined in § 1681a(e) of the Act as:

" * * * a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews * * *."

A "consumer" is defined in § 1681a(c) as "an individual."

the Act) since it was not obtained for any of the purposes enumerated in the Act.

Section 1681b sets forth the permissible purposes for which consumer reports may be used. It says a consumer reporting agency may furnish consumer reports:

"(3) To a person which it has reason to believe \* \* \* [intends to use the information for any of the purposes enumerated in § 1681a] or

\* \* \* \* \* \*

"(D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or

"(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer."

Section 1681e requires consumer reporting agencies preparing consumer reports to "(b) \* \* \* follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

■■■ The threshold question to be decided is the scope of the Act. Plaintiff argues that any report made by a credit reporting agency with respect to an individual is a consumer report, and the report must be used only for the purposes enumerated in § 1681b. Section 1681b(3)(D), on its face, is not applicable in this case, and defendant Favour & Quail contends it did not intend to use the consumer report for any of the other purposes enumerated in § 1681b. It claims that in these circumstances the report cannot be a "consumer report" as defined by § 1681a(d) of the Act. If, as contended by defendant Favour & Quail, § 1681a(d) restricts consumer reports to just those reports used for certain purposes, then the Act

must be construed against plaintiff. Such a reading of the Act, however, flies in the face of the legislative intent.

The Congressional purpose behind the Act is set forth in § 1681, which provides in part:

"(a) The Congress makes the following findings:

\* \* \* \* \* \*

"(4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's *right to privacy*.

"(b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer \* \* \*." (emphasis added)

Congress' concern was to protect consumers from the misuse of information acquired by credit reporting agencies. The Act cannot be interpreted as applicable to the activities of credit reporting agencies only when the consumer applies for credit, insurance, or employment, leaving them otherwise free to continue the very practices the Act was designed to prohibit. The Act would afford little protection for the privacy of a consumer if it only regulated credit reporting agencies in the area of their legitimate business activities but left them free to continue their clandestine activities in other areas.

If a consumer report is only a report made for one of the purposes enumerated in § 1681a(d), then § 1681b(3), restricting the uses to which a consumer report may be put, adds nothing to the Act. In order for § 1681b(3) to be meaningful, "consumer report" must be interpreted to mean any report made by a credit reporting agency of information *that could be used* for one of the pur-

poses enumerated in § 1681a.[4] Only then can § 1681b be given the meaning Congress intended. Section 1681b states the purposes for which such reports legitimately may be used. Its clear implication is that there are some purposes for which consumer reports may *not* be furnished.

If the Act is read in this manner, plaintiff's first claim presents the issue whether defendant Credit Bureau violated §§ 1681b, 1681e, 1681g, 1681n, and 1681o of the Act.

Defendants cite several cases in which they claim other courts have construed this Act more restrictively, i.e., Wrigley v. Dun & Bradstreet, Inc., 375 F.Supp. 969 (N.D.Ga.1974); Sizemore v. Bambi Leasing Corp., 360 F.Supp. 252 (N.D. Ga.1973); and Fernandez v. Retail Credit Co., 349 F.Supp. 652 (E.D.La. 1972). In those cases the Act was construed as not applicable to reports made by credit reporting agencies on individuals where a corporation or business in which the individual was a principal had applied for credit or insurance. Those cases are readily distinguishable from the present case in two respects.

[3] First, if an individual chooses to do business as a corporation in order to limit his liability, he must not expect the same degree of privacy as other individuals when applying for credit. He could apply for credit as an individual and retain the protection of the Act if he wished. Second, in each of these cases the individual was aware that his company had applied for credit or insurance and might be investigated. Thus, the individual can be held to have assumed the risk of a report being made on him. In the instant case, however, plaintiff had no reason to believe that he would be investigated, because he did not apply for credit, insurance, or employment. A report made on an individual in these circumstances must comply with the Act.

■ Plaintiff also claims that defendant Credit Bureau violated four other sections of the Act. However, these claims are not supported by any reading of the Act. Section 1681d does not apply to defendant Credit Bureau since it relates solely to investigative consumer reports. Plaintiff has not alleged facts that defendants used obsolete information as prohibited by § 1681c. Section 1681k is inapplicable because it may be used only when a report is actually furnished for employment purposes. Nor is § 1681l applicable as this section relates solely to investigative consumer reports.

### Plaintiff's Second Claim

■ Plaintiff contends that defendant Favour & Quail cannot move to dismiss his first amended complaint on the same grounds by which Favour & Quail moved to dismiss his original complaint. Judge Skopil denied defendant Favour & Quail's first motion to dismiss, and it is urged that that is now the law of this case. Plaintiff cites Twin City Sportservice, Inc. v. Charles O. Finley & Co.,

---

4. In this connection Senator Proxmire's comments when he introduced the Fair Credit Reporting Bill in the Senate are helpful. The bill was designed to allow consumers who have applied for credit to protect themselves from certain practices of the credit reporting industry. Proxmire said his bill would require:

"* * * that credit bureaus have in effect procedures for guaranteeing the confidentiality of the information they collect and that no such information be released to noncreditors such as governmental investigative agencies without the express consent of the person involved." 114 Cong.Rec. 24902 (1968).

There is also evidence in the record of the House of Representatives Subcommittee on Consumer Affairs of the Committee on Banking and Currency, 91st Cong.2d Session, "Hearings on H.R. 16340", that the Subcommittee, at least, felt a purpose of the bill was to keep credit reporting agencies from furnishing credit reports to unauthorized persons. A report from "The CBS Evening News" on March 17, 1969, was shown to the Subcommittee (Hearings, pp. 59-61). The report showed how easily unauthorized persons could obtain credit reports on anyone. It is such use that is the basis for the allegations in plaintiff's first claim.

Inc., 365 F.Supp. 235, 254 (N.D.Cal. 1972), reversed on other grounds, 512 F.2d 1264 (9th Cir., 1975) (corrected opinion), where Retired Justice Tom Clark denied defendant's second motion to strike because a prior judge had denied the same motion. In that case, however, there were no new pleadings between the two motions. Here, the complaint was amended between the motions.

It would be grossly unfair to allow plaintiff to amend its complaint and not allow a defendant to attack it, because a prior motion to dismiss a prior complaint was denied. This is a different pleading and as such may be attacked anew by defendants.

■ Plaintiff's second claim for relief alleges that defendant Favour & Quail violated §§ 1681b, 1681d, 1681e and 1681g of the Act. Section 1681d requires the procurer of an investigative consumer report to disclose to the consumer that a report on him may be made. However, counsel for plaintiff conceded that there was only one consumer report prepared. Since no investigative consumer report was procured, § 1681d of the Act could not have been violated. Defendant Favour & Quail cannot have violated §§ 1681b, 1681e or 1681g, because it is not a consumer reporting agency as defined by § 1681a(f) of the Act. Accordingly, plaintiff's second claim must be dismissed against defendant Favour & Quail.

#### Plaintiff's Third and Fourth Claims

■ Plaintiff's third and fourth claims allege that defendants Credit Bureau and Favour & Quail, respectively, and other, unknown defendants participated in a campaign to willfully and maliciously discredit and otherwise injure plaintiff. Section 1681h(e) of the Act allows such claims to be brought, in addition to claims for violations of the Act itself. Plaintiff claims his privacy was invaded by eight "means, instrumentalities and methods". Only one of these means involves the making and using of investigative consumer reports or consumer reports in violation of the Act. The question is whether this should be enough to make pendent a claim which would otherwise be actionable only in the state courts.

In United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court laid down guidelines for deciding when the pendent jurisdiction of the district court could or should be exercised. The Court said:

"The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

"That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; * * *. * * * [I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed * * *. * * *

" * * * Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." 383 U.S. at 725–727, 86 S.Ct. at 1138. (footnotes omitted.)

Here, the first claim alleges events occurring within the scope of the third and fourth claims. Thus, there is power in this Court "to hear the whole".

The question remains whether this is a case where this power should be exercised. The first claim is separable from the third and fourth in terms of proof and the scope of the issues raised. The issue in the first claim is only whether in procuring, making, or furnishing reports, defendant Credit Bureau violated the Act. Severing the third and fourth claims would result in a substantial savings of the Court's time without very much inconvenience to the litigants. The third and fourth claims could be brought in state court.

In the third and fourth claims the "state claim constitutes the real body of [the] case, to which the federal claim is only an appendage". The majority of the allegations in these claims do not presume that the invasion of privacy occurred pursuant to or as a result of the making of any credit report. It is not necessary for plaintiff to show a violation of the Act in order to prove his third and fourth claims. Moreover, only one of the acts alleged in the third and fourth claims is closely related to the acts alleged in the first claim.[5] The non-federal issues substantially predominate, in terms of proof, scope of the issues raised, and in the amount and comprehensiveness of the remedy sought.

Therefore, for the reasons stated,

It is hereby ordered that defendant Credit Bureau of Prescott's motion to dismiss the first claim of the First Amended Complaint is denied.

It is hereby further ordered that defendant Favour & Quail's motion to dismiss the second claim of the First Amended Complaint is granted.

It is hereby further ordered that the motions to dismiss the third and fourth claims of the First Amended Complaint are granted.

---

5. In Paragraphs XXIX and XXXXI of the First Amended Complaint only allegations II are related to the first claim. Allegations A–G do not allege that they are related to the making or furnishing of a consumer report.