David E. ZELLER, Plaintiff,

v.

Leonard J. SAMIA, d/b/a The Samia Companies, Defendant.

Civ. A. No. 89–1187–C.

United States District Court, D. Massachusetts.

March 14, 1991.

Sibley P. Reppert, Valerie C. Samuels, Posternak, Blankstein & Lund, Boston, Mass., for defendant.

William T. Bogaert, Morrison, Mahoney & Miller, Boston, Mass., for plaintiff.

## MEMORANDUM

CAFFREY, Senior District Judge.

This case is before the Court on the defendant's, Leonard J. Samia, motion for summary judgment and motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 56(c). The plaintiff, David E. Zeller, commenced this action against the defendant seeking relief under the Fair Credit Reporting Act ("FCRA" or the "Act"). 15 U.S.C. § 1681 *et seq.* (1982 & Supp.1990). The first Count alleged by the plaintiff is for violation of section 1681h(e) of FCRA. Counts Two, Three, and Four are for violation of section 1681q of the Act. The plaintiff's amended complaint also alleges seven state common law and statutory claims. Jurisdiction of this Court is based upon 15 U.S.C. § 1681p, and pendent jurisdiction. For the reasons stated below, the defendant's motion for summary judgment and motion to dismiss should be granted. The plaintiff's pendent state claims should also be dismissed for lack of subject matter jurisdiction.

## I.

Considering the facts in the light most favorable to the plaintiff, the relevant undisputed facts are as follows. This entire dispute arose out of a credit transaction that occurred in 1976, between the plaintiff and defendant in connection with their joint purchase of a beach cottage located in Hull, Massachusetts (the "Hull property"). At the time of their purchase of the cottage, the plaintiff signed a note, dated May 26, 1976, promising to pay the defendant $3,333.33, which constituted the plaintiff's share of the $10,000.00 down payment.

In 1985, the relationship between the two parties deteriorated, and in 1986, the defendant instituted litigation in Plymouth Probate Court in which he sued the plaintiff for partition and accounting in connection with the jointly owned Hull property. In preparation for the partition action, the defendant allegedly discovered the unpaid note. The defendant demanded that the plaintiff pay the balance due on the note or provide him with proof of payment. In June 1987, after the plaintiff failed to meet this request, the defendant reported a charge-off to Credit Data of New England ("Credit Data"). The charge-off totalled approximately $11,000.00 which included allegedly unpaid principal, interest, and costs.

In August and September of 1987, the defendant made several inquiries to Credit Data, which he said he made for the sole purpose of verifying that the charge-off he reported had been received and recorded by the agency. The plaintiff contends, however, that the defendant not only used the report to verify the recording of the charge-off, but also used the credit information against him during the partition and accounting proceeding involving the Hull property. In response to the defendant's request, he received from Credit Data the plaintiff's two-page credit report. The report included information concerning the plaintiff's entire credit history from the

agency's existing credit files, not just information relating solely to the charge-off.

As a result of the defendant's placement of the charge-off and his subsequent inquiries, the plaintiff was rejected for credit with two mortgage lending institutions and a credit card company. The plaintiff then filed this action against the defendant seeking actual and punitive damages.

## II.

The defendant has moved for summary judgment on Counts II, III, and IV of the plaintiff's amended complaint, pursuant to Fed.R.Civ.P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The moving party may satisfy this burden by showing that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553. Only after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact does the party opposing the motion bear the burden of responding. *Id.* at 321, 106 S.Ct. at 2551; *Adickes*, 398 U.S. at 159–60, 90 S.Ct. at 1609–10. The opposing party may not rest upon the mere allegations or denials in its pleading, but must respond with affidavits or otherwise to show the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); *Adickes*, 398 U.S. at 159–60, 90 S.Ct. at 1609–10. A dispute about a material fact is a "genuine issue" if the evidence is such that a reasonable

jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In light of this standard, this Court shall examine the defendant's motion for summary judgment.

The first issue raised by the defendant is whether FCRA is applicable to the plaintiff's claims alleged under section 1681q of the Act. FCRA provides for civil liability for those who do not comply with the requirements of the Act. 15 U.S.C. §§ 1681n, 1681o. Sections 1681n and 1681o impose liability on a user of credit information for willful or negligent noncompliance with any provision of the Act.[1] Although section 1681q on its face only provides a basis of criminal liability, courts have held that this section also provides a basis of civil liability under sections 1681n and 1681o. *See Yohay v. Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987). *Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 369 (6th Cir.1984); *Hansen v. Morgan*, 582 F.2d 1214, 1219 (9th Cir.1978); *New Palm Gardens, Inc. v. Bentley*, No. 82–1361–MA (D.Mass. Aug. 11, 1983) (Lexis, Genfed Library). Section 1681q imposes liability on any person who "knowingly and willfully obtain[ed] information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q. *See Hansen*, 582 F.2d at 1219.

Certain FCRA requirements are imposed only in connection with the use of "consumer reports," as opposed to consumer information in general. *See, e.g.*, 15 U.S.C. §§ 1681b, 1681c, 1681e; *see also Ippolito v. WNS, Inc.*, 864 F.2d 440, 449 (7th Cir.1988), *cert. dismissed*, 490 U.S. 1061, 109 S.Ct.

---

1. Those who willfully or negligently violate the requirements of FCRA are liable for actual damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n, 1681o. The alleged damages, however, must be proximately caused by the defendant's violation of the Act. Consequently, plaintiff's injury must be a direct result of the defendant's request and use of the plaintiff's credit report.

1975, 104 L.Ed.2d 623 (1989). Other provisions of the Act apply without regard to whether "consumer reports" are involved. *See, e.g.,* 15 U.S.C. §§ 1681r, 1681s. Where liability is premised on a violation of section 1681q, as is the case here, however, courts disagree as to whether this section pertains to all consumer information obtained from consumer reporting agency or just to "consumer reports" as defined by the Act. *Compare Kennedy,* 747 F.2d at 369 (§ 1681q pertains to all information obtained from a reporting agency, not merely consumer reports); *New Palm Gardens,* No. 82–1361–MA (same); *Rice v. Montgomery Ward & Co.,* 450 F.Supp. 668, 671 (M.D.N.C.1978) (same); *with Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1273 (9th Cir.1990) (§ 1681q only applies to information that constitutes a "consumer report" under the Act); *Matthews v. Worthen Bank & Trust Co.,* 741 F.2d 217, 219 (8th Cir.1984) (same). Under the more restrictive test, there are two steps. First, the Court must determine whether the information requested by the user constitutes a "consumer report." If it is found that a consumer report is involved, it must then be determined whether the information was obtained under false pretenses. Although the First Circuit has not addressed this issue, it is unnecessary for this Court to decide which is the proper interpretation of section 1681q, because the result in this case is the same under either analysis, as will be demonstrated below.

■ The more restrictive view interprets section 1681q to apply only to consumer reports, not all consumer information. Thus, the starting point of this Court's consideration of the issues is whether the information collected and released by the reporting agency constitutes a "consumer report." *See Comeaux,* 915 F.2d at 1273; *Matthews,* 741 F.2d at 219. The defendant argues that no liability can attach under

FCRA because the credit report it received was not a "consumer report" within the meaning of section 1681a(d), because the report was requested for a nonconsumer purpose.[2] FCRA defines a consumer report as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which *is used or expected to be used or collected in whole or in part for the purpose* of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under 1681b. . . .

15 U.S.C. § 1681a(d) (emphasis added). Section 1681b, which completes the definition of a consumer report, provides in relevant part:

> A consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> . . . . .
>
> (3) To a person it has reason to believe—
>
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
>
> . . . . .
>
> (E) . . . has a legitimate business need for the information in connection with a business transaction involving the consumer.

**2.** The defendant also argues that FCRA does not apply because he is not a "user of information." *See* 15 U.S.C. §§ 1681n, 1681*o* (FCRA applies to any "user of information which . . . fails to comply with any requirement" of the Act). This argument, however, is without merit. It is undisputed that the defendant both requested and received the plaintiff's credit report. Therefore, the defendant is a "user of information" under the Act regardless whether he actually ever used the information for any purpose other than to "verify that a charge-off" had been received and recorded by the credit agency. *See Hansen,* 582 F.2d at 1214.

15 U.S.C. § 1681b.[3] To constitute a "consumer report" the information contained in the report must have been "used or expected to be used," or "collected in whole or in part" for one of the purposes set forth in section 1681a(d). Thus, whether a report collected and released by a consumer reporting agency qualifies as a consumer report, depends on the expected use of the report or the purpose for which the information was collected by the agency.

First, if the information was used or expected to be used to assess an individual's eligibility for personal credit, insurance, or employment, then the information constitutes a "consumer report," and is governed by FCRA. *See Ippolito*, 864 F.2d at 449. Reports issued for commercial, business or professional purposes are outside the scope of the Act. *See id.* at 452; *D'Angelo v. Wilmington Medical Center, Inc.*, 515 F.Supp. 1250, 1253 (D.Del.1981). FCRA is designed to protect consumers only in their individual capacities. For example, where a corporate plaintiff applies for credit for a commercial purpose, the plaintiff is not a member of the class the Act was intended to benefit. *See Ippolito*, 864 F.2d at 450. Accordingly, section 1681e(a) requires the user to "certify the purposes for which the information sought, and certify that the information will be used for no other purpose." 15 U.S.C. § 1681e(a). Therefore, if the user of a report led the reporting agency to believe that the report would be used for a permissible purpose under the Act, then the report is a "consumer report," and the "ultimate use to which the report is actually put is irrelevant to the question of whether the FCRA governs the report's use and the user's conduct." *Comeaux*, 915 F.2d at 1274; *Ippolito*, 864 F.2d at 450; *Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 696 (10th Cir.1980); *Hansen*, 582 F.2d at 1218; *Cotto v. Jenney*, 721 F.Supp. 5, 7 (D.Mass.1989).

Second, if the consumer reporting agency which prepared the report, originally collected the information expecting it to be used for one of the purposes set forth in section 1681a(d), then the report would also constitute a "consumer report" under FCRA. *See St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 885 (5th Cir.1989); *Ippolito*, 864 F.2d at 449; *Boothe v. TRW Credit Data*, 523 F.Supp. 631, 634 (S.D.N.Y.1981). Thus, if the information was collected for one of the purposes under the Act, it is a "consumer report" regardless of the purpose which the report is subsequently used.

In this case, the information contained in the plaintiff's credit report was both collected and used for a consumer purpose as defined by section 1681a of the Act. The defendant requested the plaintiff's credit information to verify that a charge-off had been received and recorded by the agency. As a result of the request, the defendant received a copy of the plaintiff's pre-existing credit report. The report contained consumer credit information which had already been collected for a consumer purpose under section 1681a, unrelated to the charge-off reported previously by the defendant to the credit agency. Moreover, the defendant's requested use of the credit report was in connection with a "credit transaction" involving the plaintiff in his individual capacity. Under section 1681b(3)(A), information that is furnished by a credit agency involving the extension of credit or collection of debt is considered a "consumer report." Even if the defendant later used the information for another purpose, the data supplied by the agency would be governed by the Act, if the agency expected the report to be used for the represented purpose. *See Ippolito*, 864 F.2d at 449. Thus, the information provided to the defendant constitutes a "consum-

---

**3.** Courts have recognized section 1681a as the primary definitional section to resolve the conflict between sections 1681a(d) and 1681b(3)(E), because if section 1681b(3)(E) is interpreted broadly, the specifics of the preceeding subsections are rendered meaningless. *See Ippolito*, 864 F.2d at 451; *Hovater v. Equifax, Inc.*, 823 F.2d 413, 419 (11th Cir.1987); *Houghton v. New Jersey Mfr. Ins. Co.*, 795 F.2d 1144, 1149–50 (3d Cir.1986). Therefore, the definition of a "consumer report" has been limited to information used or collected in connection with a business transaction involving one of the consumer purposes set out under the Act.

er report" under FCRA, because the purpose for which the information was originally collected was not solely for use in preparing the defendant's request and the use of the information was related to a prior credit transaction involving the plaintiff.

▇▇▇ The next issue this Court must address under either of the two approaches, is whether the defendant obtained the report under false pretenses. *Compare Kennedy*, 747 F.2d at 369 (§ 1681q pertains to all information); *with Comeaux*, 915 F.2d at 1273 (§ 1681q only applies to information that constitutes a "consumer report"). The question of whether consumer information has been obtained under false pretenses is determined with reference to the permissible purposes for which consumer reports may be obtained under section 1681b of the Act. *Hansen*, 582 F.2d at 1219–20; *Boothe v. TRW Credit Data*, 557 F.Supp. 66, 71 (S.D. N.Y.1982). If a user requests information from a consumer reporting agency for a purpose not permitted by section 1681b, while representing to the agency that the report will be used for a permissible purpose, the user may be liable for obtaining information under false pretenses under section 1681q. *See, e.g., Zamora v. Valley Fed. Sav. & Loan Ass'n of Grand Junction*, 811 F.2d 1368, 1370 (10th Cir.1987); *Hansen*, 582 F.2d at 1219–20; *Boothe*, 557 F.Supp. at 71. After a review of the record in the light most favorable to the plaintiff, there is no issue of material fact regarding whether the defendant had a permissible purpose for obtaining the report.

Only two of the permissible purposes set forth in section 1681b are at issue in the present case. First, the defendant contends he obtained the reports about the plaintiff in connection with a credit transaction involving the plaintiff. Section 1681b(3)(A) provides that a user may obtain a "consumer report" if the report was used "in connection with a credit transaction in-

volving the consumer"[4] or involving the "collection of an account." Thus, the defendant's use of the report was justified under section 1681b(3)(A), because the defendant's purpose for obtaining the report was either to verify the recording of the charge-off, or to prepare for the civil proceeding in Plymouth Probate Court involving the partition and accounting of the Hull property.

At the time of the inquiry, the defendant informed the credit agency that he sought the plaintiff's credit information to verify that a "charge-off" had been received and recorded. The charge-off related to an allegedly unpaid note from the plaintiff to the defendant that was granted in connection with their joint purchase of a summer cottage. This note represented the plaintiff's share of the $10,000 down payment on the Hull property which was paid by the defendant. Even if the defendant used the plaintiff's credit information against the plaintiff during the civil proceeding involving the partition and accounting of this property, his use of the report was still permissible under section 1681b(3)(A), to further assist him in the collection of the alleged debt owed by the plaintiff. Thus, the information requested by the defendant was requested for a permissible purpose under section 1681b(3)(A) of the Act.

▇▇▇ Defendant's second argument in justification of his actions is that he obtained the plaintiff's credit report because he had a legitimate business need for the information. Section 1681b(3)(E) states that a user may obtain a consumer report if he has a "legitimate business need for the information in connection with a business transaction involving the consumer."[5] The terms "legitimate business need" and "in connection with" refer to the needs and objectives of the individual to whom the report is furnished, not the needs of the person about whom the report is furnished.

---

**4.** 15 U.S.C. § 1681a(c) defines "consumer" as an "individual." *See Belshaw v. Credit Bureau of Prescott*, 392 F.Supp. 1356, 1360 (D.Ariz.1975) (credit information provided by agency on "cor-

porate plaintiff" was outside the scope of FCRA).

**5.** 15 U.S.C. § 1681a(c) defines "consumer" as an "individual." *See Belshaw*, 392 F.Supp. at 1360.

782

*Fernandez v. Retail Credit Co.,* 349 F.Supp. 652, 654–55 (E.D.La.1972).

 In this case, the plaintiff has not introduced any evidence indicating that the defendant's use of the information was for any other reason than "in connection with" a business arrangement involving the plaintiff. It is undisputed that defendant's inquiry and use of the plaintiff's credit information was limited to the transaction involving the Hull property which was the subject of the probate proceeding. Therefore, the evidence shows that the defendant had a legitimate business need for the information in connection with a "business transaction" involving the plaintiff.

Upon review of the evidence, there is no dispute as to any material fact regarding whether the defendant requested the plaintiff's report for a permissible purpose under the Act. Thus, summary judgment should be granted in favor of the defendant on Counts II, III, and IV of plaintiff's amended complaint.

### III.

 The next issue this Court must address is whether Count I, alleging a violation of section 1681h(e), of the plaintiff's amended complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The defendant contends, and the plaintiff concedes, that section 1681h(e) of FCRA does not provide a cause of action for the mere furnishing of credit information to a credit reporting agency. It is well settled that a party who does no more than furnish information to a credit reporting agency is not liable under the Act. *See Smith v. First Nat'l Bank of Atlanta,* 837 F.2d 1575, 1578 (11th Cir.), *cert. denied,* 488 U.S. 821, 109 S.Ct. 64, 102 L.Ed.2d 41 (1988); *Alvarez Melendez v. Citibank,* 705 F.Supp. 67, 70 (D.C.Puerto Rico 1988); *Mitchell v. First Nat'l Bank of Dozier,* 505 F.Supp. 176, 177 (M.D.Ala.1981). In the present case, it is undisputed that the charge-off reported to the agency related to a loan transaction between the plaintiff and the defendant. Therefore, plaintiff's Count I alleging a violation of section 1681h(e) of the Act should be dismissed.

### IV.

Last, the plaintiff's amended complaint alleges various state common law and statutory claims. Pendent jurisdiction is a matter of discretion justified by considerations of judicial economy, convenience, and fairness to litigants. *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). When the federal claims that provide the basis for federal jurisdiction are dismissed before trial, the state claims should also be dismissed. *Id.* Accordingly, plaintiff's state law claims, Counts IV–IX, should be dismissed for lack of subject matter jurisdiction.

For all the reasons stated above, defendant's motion to dismiss plaintiff's Count I and motion for summary judgment should be granted. Plaintiff's pendent state claims should also be dismissed for lack of subject matter jurisdiction.