896 F.Supp. 478 (1995)
Thomas and Denise HALL
v.
HARLEYSVILLE INSURANCE CO., Harleysville Mutual Insurance Co., Kate Hinkle, Loss Prevention Consultants, Inc., John Ciaccio, Philip A. Olshevski, and Cod Associates, Inc.
Civ. A. No. 94-6656.
United States District Court, E.D. Pennsylvania.
August 18, 1995.
*479 Cary L. Flitter, Lundy, Flitter & Beldecos, P.C., Narberth, PA, for plaintiffs.
Thomas K. Ellixson, Marshall, Dennehey, Warner, Coleman & Goggin Norristown, PA, for Harleysville and Finkle.
John R. McHaffie, Frayne & Hatzell, Philadelphia, PA, for Loss Prevention, Ciaccio and Olshevski.
Mark T. Gallagher, Kenneth M. Portner, Weber Goldstein Greenberg & Gallagher, Philadelphia, PA, for COD Associates, Inc.

MEMORANDUM
JOYNER, District Judge.

BACKGROUND
Plaintiffs, Thomas and Denise Hall, have brought this action under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681t (1982 & Supp.1995) (FCRA) and under Pennsylvania's tort of invasion of privacy.
*480 The Amended Complaint alleges that Mr. Hall was injured in the course and scope of his employment in 1990. As a result of the accident, Mr. Hall made a workers' compensation claim with Defendants Harleysville Insurance Company and Harleysville Mutual Insurance Company (collectively Harleysville). In the course of Harleysville's investigation of the claim, Harleysville and an employee, Defendant Kate Hinkle, allegedly sought both Mr. and Mrs. Hall's personal credit histories. To this end, Harleysville and Hinkle asked Defendant Loss Prevention Services, Inc. (LPCI) and one or both of its principals, Defendant John Ciaccio and Defendant Philip Olshevski, to run or cause to be run a confidential consumer credit report on both Mr. and Mrs. Hall.
It is agreed that LPCI, Mr. Ciaccio and/or Mr. Olshevski arranged for Defendant COD Associates, Inc. to actually run the reports. COD obtained the reports from TransUnion, a credit reporting agency, and then copied and delivered the reports to LPCI, Mr. Olshevski and/or Mr. Ciaccio, who passed the reports on to Harleysville and Hinkle. As a result, the Amended Complaint alleges, COD, LPCI, Mr. Ciaccio and Mr. Olshevski have all become Credit Reporting Agencies under the meaning of the FCRA. In addition, the Amended Complaint alleges, at no time did either Mr. or Mrs. Hall give any of the Defendants permission to pull their confidential consumer credit reports, nor were any of the Defendants privileged to do so.
Today, we resolve three separate motions for summary judgment on Counts One and Three. The first motion is a joint motion of LPCI, Mr. Olshevski and Mr. Ciaccio. The second is COD's, and the third is Plaintiffs'. Because Harleysville and Hinkle have not filed nor are the subjects of a summary judgment motion, this Memorandum will not address the merits or evidence concerning any claims asserted against them.

STANDARD OF REVIEW
In considering a motion for summary judgment, a court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. Id. at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

ANALYSIS

A. FAIR CREDIT REPORTING ACT
Count One pleads violations of the FCRA. Before any analysis of these claims can be made, however, this Court must resolve one primary legal issue; whether the reports that COD obtained from TransUnion and transmitted to LPCI, Mr. Olshevski and/or Mr. Ciaccio were Consumer Reports[1] as that term is defined in the FCRA. If they are not, then Defendants rightly argue that Count One must be dismissed as a matter of law.
*481 The FCRA was enacted by Congress to ensure fairness, accuracy, and privacy in the creation and reporting of Consumer Reports. 15 U.S.C. § 1681. To this end, Congress determined that Consumer Reports may only be released by a Consumer Reporting Agency under certain circumstances. 15 U.S.C. § 1681b. Moreover, Investigative Consumer Reports, a type of Consumer Report, can only be procured or caused to be prepared with notice to the Consumer. 15 U.S.C. § 1681d. Violators of these or other sections of the FCRA are subject to civil and criminal sanctions. 15 U.S.C. §§ 1681n, o, q, r, s.
To determine whether a particular report is covered by the FCRA, it is essential to determine first whether the report is either a Consumer Report or an Investigative Consumer Report. A Consumer Report is defined, in pertinent part, by the FCRA as:
any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily for personal, family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under section 1681b of this title.
15 U.S.C. § 1681a(d). An Investigative Consumer Report, in pertinent part, is defined as:
a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information, However, such information shall not include specific factual information on a consumer's credit record obtained directly from a creditor of the consumer or for a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.
15 U.S.C. § 1681a(e).

1. Whether the Reports in this Action are Consumer Reports
All parties agree that the reports at issue in this case are not Investigative Consumer Reports because they were not prepared through personal interviews with neighbors, friends or associates of Mr. and Mrs. Hall. 15 U.S.C. § 1681a(e). Defendants argue that the reports in this case are also not Consumer Reports because they do not fall within the language of the statute.
Defendants cite a Third Circuit opinion, which they read as holding that when a report is not used to determine eligibility for credit, insurance or employment, that the report is not a Consumer Report. Houghton v. New Jersey Mfrs. Ins. Co., 795 F.2d 1144, 1148 (3d Cir.1986). Other courts have interpreted the FCRA in like fashion. See Hovater v. Equifax, Inc., 823 F.2d 413 (11th Cir. 1987); Cochran v. Metropolitan Life Ins. Co., 472 F.Supp. 827 (N.D.Ga.1979). Defendants assert that Mr. and Mrs. Halls' reports were obtained for the purpose of evaluating Mr. Hall's worker's compensation claim. Because this is not one of the enumerated uses that makes a report a Consumer Report, Defendants argue, the reports are not covered by the FCRA.
Plaintiffs, in contrast, argue that the reports are Consumer Reports, and distinguish Houghton on its facts. They argue that in Houghton, the defendant, an insurance company, asked the Consumer Reporting Agency for "General Financial Information (Income, property, etc.)" about a claimant. 795 F.2d at 1146. The Consumer Reporting Agency reported simply that "[w]e did check available credit files through a confidential source, and we are unable to come up with any financial irregularities." Id. The plaintiffs argued that as a result of this search, the report was both a Consumer Report and an Investigative Consumer Report.
The Third Circuit ruled that the defendant's request was not "on its face" a request for a Consumer Report, and that the received *482 report was not "on its face" a Consumer Report. Id. at 1148. Because of this, the Court conducted a further analysis and considered the purpose for which the report was intended. It held that because the report was not requested for one of the three enumerated uses, the report was not an Investigative Consumer Report.
Here, Plaintiffs argue, the Defendants specifically requested a credit report, which they argue is a type of Consumer Report. More importantly, Plaintiffs argue, Defendants received an actual credit report. According to Plaintiffs, because the reports received in this action were, on their faces, Consumer Reports, Houghton's continued analysis concerning the use of the reports, is irrelevant to the case at bar. Plaintiffs distinguish Hovater and Cochran on the same grounds. In neither of those cases, Plaintiffs point out, were actual credit reports requested or received by defendants. Plaintiffs support this argument further with a number of cases holding that the FCRA covers actual credit reports because those reports were originally collected for the purposes of determining eligibility for insurance, credit or employment, even if they were not used for those purposes in these particular instances. See St. Paul Guardian Ins. Co. v. Johnson, 884 F.2d 881, 883 (5th Cir.1989); Ippolito v. WNS, Inc., 864 F.2d 440, 453 (7th Cir.1988), cert. dismissed, 490 U.S. 1061, 109 S.Ct. 1975, 104 L.Ed.2d 623 (1989); Zeller v. Samia, 758 F.Supp. 775, 780 (D.Mass.1991).
In addition, Plaintiffs cite FTC guidelines. The FTC has concluded that "an insurance claims report would be a consumer report if a consumer report (or information from a consumer report) were used to prepare it." 16 CFR Pt. 600 App. § 603(5)(C). Further, the FTC maintains that an "insurer may not obtain a consumer report for the purpose of evaluating a claim (to ascertain its validity or otherwise determine what action should be taken), because permissible purposes relating to insurance are limited by [§ 1681b(3)(C)] to `underwriting' purposes." 16 CFR Pt. 600 App. § 604(3)(C)(2).
We conclude that the reports at bar are Consumer Reports. First, the request from LPCI, Mr. Olshevski and/or Mr. Ciaccio to COD, and then from COD to TransUnion specifically requested credit history reports on the Halls. This distinguishes this action from the facts in Houghton, where the defendant simply requested "general financial information." Because the Houghton request, on its face, was not for a Consumer Report, the Third Circuit was compelled to look beneath the face of the request to determine whether the report issued was, in fact, a Consumer Report. 795 F.2d at 1148. In dicta, the Third Circuit held that if there is sufficient detail on the face of a report to indicate that the report is a Consumer Report, then the FCRA's provisions come into play, even if defendant did not request a Consumer Report. Id. at 1149. Here, there was sufficient detail on the face of the report, if not on the face of the request as well, to give notice to Defendants that they received a Consumer Report, and that they were under the FCRA's coverage.
Plaintiff has produced evidence that LPCI, Mr. Olshevski and/or Mr. Ciaccio requested a "credit history report" from COD. The reports received by COD from TransUnion state at their heads that they are "credit reports." In addition, each TransUnion report included a statement, created by Defendants themselves, informing the report's recipient that the report is subject to the provisions of the FCRA. Olshevski Dep. at 45. Further, Plaintiff has produced deposition testimony from a TransUnion representative. This representative stated that TransUnion collects information for the purpose of providing summaries of that information to its clients. Ryan Dep. at 12. In turn, those clients use the information for establishing a consumer's eligibility for credit, for employment purposes or for insurance underwriting. Id. at 15. Because Plaintiffs' uncontested evidence demonstrates that the reports were collected for purposes enumerated in the FCRA, because the reports, on their faces, appear to be Consumer Reports, and because Defendants' own statement acknowledged that the reports were covered by the FCRA, we find that the reports at issue in this action are Consumer Reports under the FCRA. *483 Therefore, under Houghton, the FCRA provisions apply. 795 F.2d at 1149.[2]

2. Whether the FCRA was Violated
Because we have determined that the FCRA does apply to this action, we turn now to Plaintiff's Motion for Summary Judgment on its civil liability claims under the FCRA. Plaintiffs' first claim is under 15 U.S.C. § 1681n. This section provides that any "consumer reporting agency or user of information which willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for damages. Id. Plaintiffs also bring a claim against Mr. Olshevski and Mr. Ciaccio personally under 15 U.S.C. § 1681r. This section creates criminal liability against an officer or employee of a credit reporting agency who willfully provides information from agency files to an unauthorized person. Because this creates a requirement, we find that section 1681r is encompassed within section 1681n's broad provision of relief for violations of any FCRA requirements. See e.g., Kennedy v. Border City Sav. & Loan Ass'n, 747 F.2d 367, 367-68 (6th Cir.1984) (§ 1681q adds requirement to FCRA, therefore, violation of it violates § 1681n); Rice v. Montgomery Ward & Co., 450 F.Supp. 668, 671 (D.N.C.1978). Plaintiffs' third claim is under section 1681o, for negligently failing to comply with any FCRA requirement.
Plaintiffs argue that Defendants willfully and/or negligently violated the FCRA by furnishing Consumer Reports for an impermissible purpose, by failing to adopt appropriate procedures, by furnishing Consumer Reports without the consent of the Consumers, by obtaining and furnishing Consumer Reports under false pretenses, by using bogus subscriber names and false reasons, and by conspiring with other Defendants to use deceit and false pretenses to obtain and furnish Consumer Reports.
Plaintiff produces deposition testimony of Mr. Olshevski to indicate that he knew that he and/or Mr. Ciaccio and LPCI used TransUnion to obtain credit reports. In addition, Plaintiffs proffer a Service Agreement between TransUnion and COD, signed by Mr. Ciaccio as COD's General Manager, which indicates that COD represented to TransUnion that it was in the debt collection business. The TransUnion representative testified at his deposition that TransUnion will not provide credit reports to a detective agency or for insurance claim purposes. Ryan Dep. at 17, 36. According to Plaintiffs, this evidence is sufficient to demonstrate that Defendants' violations of the FCRA were willful.
Defendants also proffer Mr. Olshevski's deposition, where he testified that he was unaware that TransUnion placed any restrictions on COD in either obtaining or transmitting credit reports and that he believed it was legal to obtain credit reports for insurance claims investigations. Olshevski Dep. at 44, 57. Defendants argue, therefore, that because they deny knowing that the FCRA covered the Consumer Reports at issue, that they could not possibly have willfully violated the FCRA. They also assert that whether they were negligent is a question of fact for a jury.
We find genuine issues of material fact as to whether Defendants willfully or negligently violated the FCRA. There is evidence that Ciaccio and COD, at least, misrepresented their proposed uses of the credit reports to TransUnion. There is also evidence that TransUnion would not have given COD access to credit reports if it had known COD was a detective agency or was hired by one. However, there is also evidence that Mr. Olshevski, at least, was unaware that his access to and transmission of credit reports was impermissible. These material conflicts preclude summary judgment on Count One. We will grant summary judgment to the extent of ruling that the reports at issue are Consumer Reports. However, we will deny summary judgment on the actual FCRA claims.

*484 B. INVASION OF PRIVACY

Plaintiffs also sue Defendants for the common law tort of invasion of privacy. Pennsylvania has adopted the Restatement's definition of this claim. Harris v. Easton Pub. Co., 335 Pa.Super. 141, 483 A.2d 1377, 1383 (1984). The Restatement provides that:
One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.
Restatement (Second) of Torts § 652B (1977). The Restatement gives examples of the type of invasion covered by this section. These include opening private and personal mail, searching a safe or wallet, examining a private bank account or compelling someone, through forged court order, to permit an inspection of his or her private documents. Restatement § 652B, cmt. b.
Defendants argue that any invasion that occurred in this case does not rise to the level of this tort. They cite Chicarella v. Passant, 343 Pa.Super. 330, 494 A.2d 1109 (1985) to support this argument. In Chicarella, an insurance company obtained copies of a claimant's hospital records as part of an effort to assess his credibility. It was uncontested that the claimant's health had no relevance to the underlying insurance claim. The claimant sued the insurance company for invasion of privacy. The Superior Court ruled, however, that there was no substantial intrusion because the records gave only brief descriptions of claimant's medical treatment. Id. at 339, 494 A.2d at 1114. Moreover, the Court ruled that the information disclosed was not the type that would cause mental suffering or shame to the reasonable person. Id.
Defendants assert that the facts in Chicarella support summary judgment in this case. They argue that there was as little an intrusion in this case as there was in Chicarella because the credit reports simply give brief descriptions of the Halls' credit accounts and payment histories, and do not reveal any adverse information about the Halls. Defendants also argue that disclosure of this information is not the type that causes great shame or humiliation to a person of ordinary sensibilities.
Plaintiffs, in contrast, assert that the credit reports are more than brief descriptions, but rather a thorough and complete analysis of their financial position. They also argue that a person's finances are carefully treated in our society and kept confidential by most. Because of this, they argue, a person of ordinary sensibilities would suffer embarrassment or shame by disclosure.
We find genuine issues of material fact on this claim. The Restatement suggests that invasion of one's private bank records could qualify for this tort. We find that a person's credit history could be analogous enough to bank records for an unauthorized search of them to be a significant intrusion. We also find that it is appropriate for a jury to determine whether disclosure of a person's credit report would cause shame or embarrassment to a person of ordinary sensibilities. Accordingly, we will deny summary judgment on Count Three.
An appropriate Order follows.

ORDER
AND NOW, this 18th day of August, 1995, upon consideration of the Motion for Summary Judgment of Defendants Loss Prevention Consultants, Inc., John Ciaccio and Philip A. Olshevski (doc. no. 28) and responses thereto, the Motion is hereby DENIED.
Upon consideration of the Motion for Summary Judgment of Defendant, COD Associates, Inc. (doc. no. 35) and responses thereto, the Motion is hereby DENIED.
Upon Plaintiff's Cross-Motion for Partial Summary Judgment (doc. no. 42) and responses thereto, the Motion is hereby GRANTED in PART and DENIED in PART as explained in the attached Memorandum.
BY THE COURT.
NOTES
[1] The legal concepts in this action are fairly straightforward, but are made confusing because several very similar terms have important legal differences. In this Memorandum, when words such as Consumer Report or Investigative Consumer Report are capitalized, the words are being used as they are defined in the FCRA. In contrast, lower-case words are given their common meanings. For example, the words "credit report" refer to the type of report that laypeople think of when they hear the term "credit report," namely the reports available from companies such as TransUnion or Equifax that list all of a consumer's credit accounts or loans, balances, payment histories and the like. This is the type of report that is allegedly involved in this case.
[2] In finding that the credit reports in this action are Consumer Reports, we are not alone. Other courts, when faced with the provision of preexisting credit reports to third parties have found that those reports are Consumer Reports under the FCRA. St. Paul Guardian, 884 F.2d at 884; Zeller, 758 F.Supp. at 780; see also Mone v. Dranow, 945 F.2d 306, 308 (9th Cir.1991).